UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARK BAROODY,

                   Petitioner                 09 CV 1501 (RPP)
                                                [04 CR 649 (RPP)]
        - against -
                                         **OPINION AND ORDER**

UNITED STATES OF AMERICA,

                   Respondent.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Mark Baroody was convicted of conspiracy to distribute narcotics and distribution of a controlled substance at trial in February 2005.  The Court sentenced Mr. Baroody to sixty-three months imprisonment for each count, with each term running concurrently.  In addition, Mr. Baroody was sentenced to four years of supervised release.

      Mr. Baroody appealed his conviction to the Second Circuit Court of Appeals, where he argued that the evidence was insufficient to sustain a conviction on either count, that he was denied his Sixth Amendment right to effective counsel, and that the District Court had erred in determining that he was ineligible for the "safety valve" provision of 18 U.S.C. § 3553(f).  The Court of Appeals affirmed the conviction and affirmed the District Court's safety valve determination.  Mr. Baroody petitioned the Supreme Court for certiorari, which was denied in February 2008.

      Mr. Baroody now petitions this Court to vacate or set aside his conviction and to modify his sentence, pursuant to 28 U.S.C. § 2255.  He argues that his conviction should be vacated or set aside on grounds that his Sixth Amendment right to effective counsel was violated, because his attorney did not investigate whether one of his co-defendants

might exculpate him and because his attorney did not move to sever his trial from that of his co-defendants. He also argues that his conviction should be vacated because the government did not disclose, as required by *Brady v. Maryland*, 373 U.S. 83 (1963), exculpatory evidence, namely evidence that a co-defendant (Paul Samuels) made exculpatory statements in proffer sessions with the government about another co-defendant (Lance Owen). In addition, he petitions the Court to modify its original sentence, in light of post-*Booker* caselaw.

**I. Ineffective Assistance of Counsel**

In deciding his direct appeal, the Second Circuit Court of Appeals "denied with prejudice" Mr. Baroody's ineffective assistance of counsel claim. *United States v. Baroody*, 246 Fed. App'x 765, 767 (2d Cir. 2007). Mr. Baroody is barred from re-litigating the factual issues raised on direct appeal in a later 28 U.S.C. § 2255 petition. *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) ("It is well established that a § 2255 petition cannot be used to 'relitigate questions which were raised and considered on direct appeal.'" (quoting *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.1992)).

The re-litigation bar is not limited to the precise factual questions raised on direct appeal. Supreme Court and Second Circuit case law make clear that, regardless of whether new factual arguments are raised, once a legal ground for reversing a conviction has been rejected on direct appeal, it cannot be raised on a collateral § 2255 petition. Williams v. United States, 731 F.2d 138, 141 (2d Cir. 1984) (citing *Sanders v. United States*, 373 U.S. 1, 15-19, (1963)). The Supreme Court clarified what it meant when it barred relitigating the same legal grounds by an example:

> the contention that an involuntary confession was admitted
> in evidence against him is a distinct ground for federal
> collateral relief. But a claim of involuntary confession
> predicated on alleged psychological coercion does not raise
> a different 'ground' than does one predicated on alleged
> physical coercion. In other words, identical [legal] grounds
> may often be proved by different factual allegations.[1]

Here, there is no basis to contend that Mr. Baroody's apparently new factual allegations

of ineffective assistance of counsel raise a legal ground that was not decided on direct

appeal.  His ineffective assistance of counsel claims cannot be relitigated and are thus

barred.

## II. Failure to Disclose Exculpatory Material

Mr. Baroody argues that the government violated his rights under *Brady v.*

*Maryland*, 373 U.S. 83 (1963), when it failed to disclose the statements made by his co-

defendant, Paul Samuels, during a proffer session with the government.  At his

sentencing, Mr. Samuels claimed to have told the government, during an initial proffer

session, that Mr. Owen was innocent and un-involved with the conspiracy.  *United States*

*v. Lance Owen*, 04-CR-649, 2006 WL 288361, at *2 (S.D.N.Y. Feb. 3, 2006).  The Court

granted Mr. Owen a new trial under Federal Rule of Criminal Procedure 33, but the

Second Circuit Court of Appeals overturned this grant on grounds that Mr. Samuels'

statement about Mr. Owen did not constitute newly discovered evidence.  *United States v.*

*Owen*, 500 F.3d 83, 92 (2d Cir. 2007).

As a preliminary matter, an exculpatory statement about one defendant does not,

as a matter of law, constitute *per se* exculpatory evidence under *Brady* as to other co-

---

[1] *Sanders*, 373 U.S. at 16.

defendants.  So, if Mr. Samuels' statement exculpating Mr. Owen is found to be *Brady* material as regards Mr. Baroody, it must be because the particular facts of this case make it so.

At the February 2005 trial, the government first called DEA Special Agent Eric Baldus who testified that, on June 8, 2004, he observed Samuels and Baroody in front of a warehouse in the Bronx as a white box truck, driven by Owen, pulled into the loading bay.  Baldus testified that the truck swayed as if being loaded with items.  Special Agent Joe Doherty then testified that, when he pulled Owen over a short time later, Owen explained that he was a part-time mover and was in the process of moving some items to Tampa, Florida for a client.  Mr. Owen consented to a search of the truck.  Doherty stated that during this search he discovered bundles of marijuana wrapped in a cellophane-like material in the back of the truck and placed Owen under arrest.

Owen's defense at trial was that he was a mover and had been duped into transporting the nearly 400 pounds of marijuana by either Samuels or Baroody.  During summation, the government acknowledged that, "the entire case really comes down to the defendant's knowledge."  Trial Tr., 325.

The Supreme Court in *Brady* held that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87.  Samuels' statement corroborated Owen's defense and undermined much of the circumstantial evidence against Owen.  However, as evidenced by the February 2005 trial, Owen, Baroody, and Samuels had entirely different roles in the crime.  Baroody and Samuels were involved in supplying the marijuana and

loading the marijuana into the truck, rather than simply serving as a hired driver like Owen. Samuels' statement failed to mention Baroody's lack of knowledge of the marijuana and thus is not an exculpatory statement under *Brady*.

### III. Modification of Sentence

Mr. Baroody also argues that the Court should modify his sentence in light of certain cases decided by the Supreme Court since the date he was sentenced. *United States v. Booker*, which held that the sentencing guidelines were no longer mandatory, was decided nine months before Mr. Baroody's sentencing. 543 U.S. 220, 258-61 (2005). Mr. Baroody argues that the Supreme Court's subsequent decisions in *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Moore v. United States*, 555 U.S. ___ (2008), substantially changed the law and that the Court should modify its sentence to reflect these changes. But neither *Kimbrough* nor *Moore* alters the general rule established by *Booker* that the guidelines are no longer mandatory. Instead, those cases examined the extent of *Booker* sentencing discretion in cases in which the district court considered departing from the sentencing guidelines in part because of concerns that the disparity between sentences for crimes involving crack-cocaine and crimes involving powder cocaine was unjust. *See Kimbrough*, 552 U.S. at 109 ("In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply. On the other hand, while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the

Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case." (internal quotation marks and citations omitted)). There is no contention in the instant case that the Court should have departed from the sentencing guidelines because of an unjust disparity in the relevant portions of the guidelines.

At sentencing, the Court used the sentencing guidelines as a starting point, and then looked at the 18 U.S.C. § 3553(a) factors, before determining "that the guideline sentence is the appropriate sentence." Sent. Tr., 11. This was appropriate under *Booker* and its progeny, and the Court declines to modify its original sentence.

IT IS SO ORDERED.

Dated:  New York, New York
　　　　February 2 4, 2010

Robert P. Patterson, Jr.

U.S.D.J.

6

Copies of this order were faxed or mailed to:

**Mark Baroody**
1920 Southwest 120th Terrace
Miramar, Fl 33025

**William Joseph Harrington**
United States Attorney, Southern District New York
One Saint Andrew's Plaza
New York , NY 10007
(212)-637-2331
Fax: (212)-637-2937

